**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| ———————————————————— :<br><br>VERTIV, INC., VERTIV CAPITAL,     :<br>INC., and GNARITIS, INC.,         :<br>                           :<br>       Plaintiff(s),       :<br>                           :<br>   v.                 :<br>                           :<br>WANYE BURT PTE, LTD., and    :<br>CETEX PETROCHEMICALS LTD.,  :<br>                           :<br>      Defendant(s)       :<br>———————————————————— :<br>                           :<br>VERTIV, INC., VERTIV CAPITAL,     :<br>INC., and GNARITIS, INC.,         :<br>                           :<br>       Plaintiff(s),       :<br>                           :<br>   v.                 :<br>                           :<br>WANYE BURT PTE, LTD., and    :<br>WAYNE BURT PETRO CHEMICALS  :<br>PRIVATE, LTD.              :<br>                           :<br>      Defendant(s)       :<br>———————————————————— : | Civil Action No.: 20-363 (FLW)<br><br><br><br><br><br><br><br><br><br><br><br><br>Civil Action No.: 20-13050 (FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

      Plaintiffs Vertiv, Inc. ("Vertiv"), Vertiv Capital, Inc. ("Vertiv Capital"), and Gnaritis, Inc. ("Gnaritis") (collectively "Plaintiffs") filed two separate actions, alleging that, pursuant to loan agreements purportedly executed by Defendant Wayne Burt, PTE, Ltd. ("Defendant") in 2015, Defendant owes Plaintiffs $29 million. In each action, a director of Defendant executed a certification acknowledging the debt, and consented to separate judgments in favor of Plaintiffs, in the amount of $29 million. Presently before the Court are motions seeking to vacate both

1

judgments, pursuant to Federal Rule of Civil Procedure 60(b). They are brought on behalf of Defendant by a court-appointed liquidator, Farooq Mann ("Liquidator"), assigned in 2018 by the Singapore High Court to affect the liquidation of Defendant in Singapore. For the reasons set forth herein, the Liquidator's motions are **GRANTED**.

## I.      FACTUAL BACKGROUND & PROCEDURAL HISTORY

Plaintiffs are corporations based in Princeton, New Jersey, owned in whole or in part by Krishna Ghanta ("Ghanta"). Defendant is a Singapore-based corporation. TGS Mahesh ("Mahesh") and R. Krishnan ("Krishnan") are directors of Defendant. Defendant is the majority shareholder of Cetex Petrochemicals, Ltd. ("Cetex"), an India-based corporation. Cetex is named as a co-defendant, along with Defendant, in Civil Action No. 20-363 (FLW). Wayne Burt Petrochemicals Private, Ltd. ("Wayne Burt Petro") is a wholly owned subsidiary of Defendant. Wayne Burt Petro is named as a co-defendant in Civil Action No. 20-13050 (FLW).

Plaintiffs allege in each of these suits that, pursuant to loan agreements purportedly executed by Defendant in 2015, Defendant is indebted to Plaintiffs in the amount of $29 million. Plaintiffs allege that they each entered into loan agreements with Defendant on April 5, 2015, under which a total of $16,000,000 was loaned to Defendant.[1] Plaintiffs further allege that, as security for the loans, Defendant signed a Stock Pledge Agreement ("SPA"), pledging to Plaintiffs 29,651,068 shares of stock which it owned in Cetex. According to Plaintiffs, Krishnan and Mahesh, as directors of Defendant, confirmed the existence of these loans in letters dated January 21, 2018, and February 25, 2018. The Liquidator contests the legitimacy of the loans.

---

[1]      Under these purported agreements, Defendant agreed to pay interest on the principal at 15% per annum up and until January 10, 2018. That rate would increase to 20% if Defendant failed to repay the loan on January 10, 2018.

In November 2018, in a proceeding unrelated to the present matter, the High Court of the Republic of Singapore placed Defendant into liquidation. (Mann Cert. Feb. 26, 2021, ¶ 2.) Following this proceeding, the Liquidator was appointed by the Singapore High Court to affect the liquidation of Defendant. (*Id*.) Defendant's principal shareholder challenged that Order and applied to the Singapore High Court to stay and vacate the liquidation; a temporary stay was granted. (*Id*. at 4.) On November 26, 2019, following a year-long trial, the Singapore High Court lifted the stay and the liquidation process resumed at the direction of the Liquidator. (*Id*.) Plaintiffs do not contest the occurrence or accuracy of these Singapore proceedings as presented by the Liquidator on these Motions.

According to a certification set forth by Defendant's expert in Singaporean law:[2]

> Once the court enters such [a liquidation] order, all authority on the part of the directors and officers of the entity is terminated and vested in the liquidator. The authority of the liquidator becomes absolute, and *any purported actions taken by the entity's former management are legally ineffective*. The entity under liquidation is without power to transfer assets, incur debt, make payment to creditors, or conduct its former business; instead, only the liquidator may perform these functions. If a creditor has a claim against the entity, that claim is to be presented to the liquidator in connection with his administration of the liquidation process. The liquidator makes determinations as to the validity and quantum of the creditors' claims, subject to a process of judicial review if required. . . . [T]he process resembles a Chapter 7 bankruptcy under U.S. law.

(Mann Cert. Feb. 26, 2021, ¶ 3 (emphasis added).) Again, and importantly, Plaintiffs do not contest the accuracy of these Singapore liquidation laws, or the role of a liquidator, as set forth by Defendant's expert.

---

[2]    The Liquidator provides a certification by Raeza Khaled Salem Ibrahim, a Singaporean attorney with over ten years of experience practicing in Singapore-corporate law. (Ibrahim Cert. ¶¶ 2-3.)

On January 10, 2020, Plaintiffs commenced a lawsuit against Defendant and Cetex under Civil Action No. 20-cv-363. (*Id.* ¶ 5.) The complaint asserts that each plaintiff entered into an identical loan agreement with Defendant in 2015, under which a total of $16,000,000 was loaned to Defendant; that no payments of principle or interest were ever made; and that $29,000,000 was then owed to Plaintiffs by Defendant.[3] (*Id.*) The complaint also alleges that the Cetex stock owned by Defendant was pledged to Plaintiffs to secure the alleged loans. (*Id.*) The complaint sought a judgment declaring that the Cetex stock owned by Defendant was the property of Plaintiffs. (*Id.*) Three days after the suit was filed, an acknowledgement of service was filed on the docket by Krishnan. (*Id.* ¶ 6.) On the same day, Krishnan executed a certification, prepared by Plaintiffs' counsel, in which he stated that he signed the loan agreements, promissory notes and SPA on behalf of Defendant in 2015; that the funds referred in the loan agreements had been loaned to Defendant; and that Defendant had defaulted by failing to make repayment on January 10, 2018, two years earlier. (*Id.* ¶ 7.) The certification states that Defendant, through the Krishnan, consents to the entry of a judgment in favor of Plaintiffs in the amount of $29,000,000. (*Id.*)

Four days later, Plaintiffs' counsel filed on the docket a proposed Judgment against Defendant in the amount of $29,290,000. (*Id.* ¶ 8.) The judgment was consented to by Plaintiffs' counsel and Krishnan. (*Id.*) That judgment was entered by this Court on January 24, 2020, which also declared that Plaintiffs are the owners of the Cetex stock. (*Id.*) On February 13, 2020, Plaintiffs filed a motion to amend the judgment, requesting a greater level of background detail necessary to execute the judgment in proceedings in India, where Plaintiffs sought to pursue the Cetex stock. (*Id.* ¶ 9.) The next entry on the docket is an acknowledgement of service of the motion, signed by

---

[3]     Under these purported agreements: Vertiv Capital loaned Defendant $11,500,000, Gnaritis loaned Defendant $2,500,000, and Vertiv loaned Defendant $2,000,000; Plaintiffs calculate the current balance owed, including interested, as of January 2020, is approximately $29,000,000.

Krishnan. (*Id*.) On February 27, 2020, this Court entered the Amended Judgment, which was consented to by Krishnan and Mahesh, as well as Plaintiffs' counsel. (*Id*.)

After obtaining the Amended Judgment in February 2020, Plaintiffs instituted a second lawsuit in the District of New Jersey, under Civil Action No. 20-cv-13050 BRM/DEA.[4] (*Id*. ¶ 17.) This complaint removed reference to Cetex and added reference to Wayne Burt Petro, but otherwise its allegations were the same as in the earlier filed action. (*Id*.) Although Cetex is not named, the complaint, nonetheless, erroneously sought a judgment against Cetex declaring that Plaintiffs are the new owners of the Cetex stock previously owned by Defendant. (*Id*.)

On September 30, 2020, Plaintiffs filed acknowledgements of service of the summons and complaint, signed by Mahesh on behalf of both Defendant and Wayne Burt Petro. (*Id*. ¶ 18.) On October 19, 2020, Plaintiffs filed a certification of Mahesh, virtually identical to that which was filed in the earlier action, asserting that Defendant had borrowed $16 million from Plaintiffs in 2015 and defaulted on repayment in January 2018, and consenting to the entry of judgment in the amount of $29 million. (*Id*.) Plaintiffs submitted a proposed judgment, consented to by Mahesh and Plaintiffs' counsel. Judge Martinotti entered the second judgment on November l7, 2020. (*Id*.) Although Wayne Burt Petro is included as a party to the judgment, that entity is not referenced in any of the loan documents discussed above. (*Id*.)

On these motions, the Liquidator states that he was unaware that either judgment had been entered against Defendant until December 21, 2020, when he learned from a director of Cetex that Plaintiffs had filed a civil suit in India based on the Amended Judgment obtained from this Court.

---

[4]     This case was initially assigned to the Honorable Brian R. Martinotti, U.S.D.J., and Judge Martinotti entered a consent judgment on November 17, 2020. Once the Liquidator filed this instant motion to vacate, the case was transferred to me since the two cases are related, and the filed-motions are substantially similarity in facts and law.

(Mann Cert. Apr. 26, 2021, ¶ 7.) Upon learning of these judgments, the Liquidator submits that he promptly located counsel in New Jersey to pursue the filing of the instant motions. On February 26, 2021, the Liquidator's counsel filed motions to vacate judgments pursuant to Federal Rule of Civil Procedure 60(b). The Liquidator maintains that the judgements were fraudulently secured, and thus, are void. Plaintiffs, in response, contend that 1) the Liquidator's motion is untimely under Rule 60(c)(1), 2) that Defendant has not met the required burden of demonstrating fraud or other misconduct for reopening of a judgment under Rule 60(b), and 3) that Krishnan and Mahesh had the authority to act on behalf of Defendant in acknowledging service of the complaints and consenting to the judgments.

## II.      STANDARD OF REVIEW

Rule 60(b) "allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances[.]" *Gonzalez v. Crosby*, 545 U.S. 524, 529 (2005). Specifically, a court may grant relief from a final judgment or order under Rule 60(b) for one of the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud ..., misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated, or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

Application of Rule 60(b) is limited to "final" judgments. *See* Fed. R. Civ. P. 60; *MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers' Statewide Benefit Funds*, No. 18-16328, 2019 WL 3812889 (D.N.J. Aug. 14, 2019), aff'd sub nom. *MZM Constr. Co., Inc. v. New Jersey Bldg.*

6

*Laborers Statewide Benefit Funds*, 974 F.3d 386 (3d Cir. 2020). "[T]here is an interdependence between the 'finality' required for Rule 60(b) and section 1291."[5] *Torres v. Chater*, 125 F.3d 166, 168 (3d Cir. 1997); *see also Penn West Assocs., Inc. v. Cohen*, 371 F.3d 118 (3d Cir. 2004) ("'Rule 60(b) must be limited to review of orders that are independently 'final decisions' under 28 U.S.C. § 1291'") (quoting *Kapco Mfg. Co. v. C & O Enterprises, Inc.*, 773 F.2d 151 (7th Cir. 1985)).

Following entry of a final judgment, a Rule 60(b) motion "must be made within a reasonable time—and for reasons [60(b)] (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1); *see Lewis v. Warden Canaan USP*, 749 F. App'x 98, 99 (3d Cir. 2019) ("However, a motion under Rule 60(b)(2) must be filed within one year of the judgment that is challenged; here, Lewis filed his Rule 60(b) motion more than 19 months after the District Court's judgment. Therefore, as the District Court concluded, the motion was untimely."); *Bank of Am., N.A. v. Westheimer*, 683 F. App'x 145, 151 (3d Cir. 2017) (upholding dismissal of Rule 60(b)(2) motion made after nine months, which was within the one-year outside deadline, but still not within a "reasonable time"); *Rodrigues v. Wells Fargo Bank*, N.A., No. 16-3845, 2020 WL 278972 (D.N.J. Jan. 16, 2020) ("Plaintiff's Rule 60(b)(2) motion was filed nearly sixteen months later []. It is untimely, and must be denied for that reason alone").

---

[5]     Title 28, U.S. Code, section 1291 confers appellate jurisdiction over appeals from final decisions of the district courts:

> "The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court."

However, this "reasonable" limitation does not apply to Rule 60(b)(4), i.e., voided judgments—"such motions may be made at any time." *In re Polycel Liquidation, Inc.*, No. 00-62780, 2007 WL 77336, at *6 (D.N.J. Jan. 8, 2007). "[N]early overwhelming authority exists for the proposition that there are no time limits with regards to a challenge to a void judgment because of its status as a nullity[.]" *United States v. One Toshiba Color T.V.*, 213 F.3d 147, 157 (3d Cir. 2000). "[N]o passage of time can render a void judgment valid, and a court may always take cognizance of a judgment's void status whenever a Rule 60(b) motion is brought." *Id.*

To obtain relief under Rule 60(b)(3), a moving party must provide "clear and convincing evidence" showing that "the adverse party engaged in fraud or other misconduct, and . . . this conduct prevented the moving party from fully and fairly presenting his case." *Floorgraphics Inc. v. News Am. Marketing In-Store Servs., Inc.*, 434 F. App'x 109, 112 (3d Cir. 2011). Further, to show fraud on the court, a party must show: "(1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court." *Herring v. United States*, 424 F.3d 384, 386 (3d Cir. 2005). "[A] determination of fraud on the court may be justified only by 'the most egregious misconduct directed to the court itself,'" such as fabrication of evidence by counsel. *Id.* at 386–87, 390 (quoting *In re Coordinated Pretrial Proc. in Antibiotic Antitrust Actions*, 538 F.2d 180, 195 (8th Cir.1976)). *See also Neptune v. Carey*, No. 17-12057, 2020 WL 5629771, at *2 (D.N.J. Sept. 21, 2020) ("Plaintiff has not substantiated these allegations of untoward activity by opposing parties or the Court by clear and convincing evidence . . . The Court will therefore deny [] Plaintiff's . . . motion for relief from a judgment or order") (capitalization altered).

Under Rule 60(b)(4), "the court may relieve a party or his legal representative from a final judgment, order, or proceeding [if] . . . the judgment is *void*." Fed. R. Civ. P. 60(b)(4) (emphasis

added). "'A void judgment is one which, from its inception, was a complete nullity and without legal effect.'" *Marshall v. Bd. of Ed.*, 575 F.2d 417, 422 n. 19 (3d Cir.1978) (quoting *Lubben v. Selective Serv. Sys. Loc. Bd. No. 27*, 453 F.2d 645 (1st Cir. 1972)); *see also One Toshiba*, 213 F.3d at 157. A judgment is not void merely because it is erroneous or based upon improper application of precedent. *Id*. at 422. Under Rule 60(b)(4), a judgment may be deemed void only "if the court that rendered it lacked jurisdiction of the subject matter or *the parties* or entered 'a decree which is not within the powers granted to it by the law.'" *Id* (emphasis added and citations omitted). A judgment should only be deemed void when a court's action in entering the judgment was a "clear usurpation of power." *See Page v. Schweiker,* 786 F.2d 150, 160 (3d Cir. 1986).

Significantly, the "'remedy provided by Rule 60(b) is extraordinary, and special circumstances must justify granting relief under it.'" *Jones v. Citigroup, Inc.*, No. 14-6547, 2015 WL 3385938, at *3 (D.N.J. May 26, 2015) (quoting *Moolenaar v. Gov't of the Virgin Islands*, 822 F.2d 1342, 1346 (3d Cir. 1987)). Indeed, a Rule 60(b) motion "'may not be used as a substitute for appeal, and . . . legal error, without more cannot justify granting a Rule 60(b) motion.'" *Holland v. Holt*, 409 F. App'x 494, 497 (3d Cir. 2010) (quoting *Smith v. Evans*, 853 F.2d 155, 158 (3d Cir. 1988)).

## III.    ANALYSIS

The Liquidator claims that Krishnan and Mahesh, directors of Wayne Burt, allegedly used judgments from this Court to avoid the consequences of the company's Singaporean liquidation. (Moving Br., at 3.) To that end, the Liquidator alleges that the directors, after initially trying and failing to vacate the initial Singaporean liquidation order, colluded with Ghanta to invent the

contested loans[6] in order to secure judgments that left Plaintiffs in control of Defendant's liquidated assets. (*Id*.) The Liquidator contends that Krishnan, Mahesh, and Plaintiffs, in their Complaints, intentionally omitted information regarding the liquidation of Defendant to expedite the outcome they desired. (*Id*. at 26.) Because of this alleged fraud, the Liquidator moves to vacate both judgments under Rule 60(b)(3). Further, the Liquidator contends that a critical component of this fraud was the intentional exclusion of his participation from these proceedings, as his independent scrutiny of the purported loans would have revealed the alleged plot. (*Id*.) In that regard, the Liquidator also contends that this exclusion renders the judgments void under Rule 60(b)(4), since he, as the sole legal representative of Defendant, is the only party with the actual authority to act on behalf of Defendant in these cases. (*Id*. at 5.)

The evidence of the alleged fraud presented by the Liquidator, at a minimum, fits the definition of "misconduct" under Rule 60(b)(3).[7] *See, e.g., Churchill Downs, Inc. v. NLR Ent.,*

---

[6]     The Liquidator has presented substantial and compelling evidence of the fraudulent nature of these loans. First, the Liquidator claims that two of the three Plaintiffs did not exist at the time of the execution of the purported loans. (Moving Br., at 2.) The Liquidator asserts that Plaintiffs "employed a series of mergers and name changes of corporate entities . . . to create the false appearance that Gnaritis and Vertiv Capital were in legal existence as of the date of the alleged loans, when in fact they were not." (Collins Cert., Exhibits A-F.) Next, the Liquidator claims that payouts from the purported loans were never actually received. (Moving Br., at 11.) In support of this assertion, the Liquidator provided Wayne Burt's bank statements for the period immediately following the date of the alleged loans and provided the Court with Wayne Burt's April 1, 2015 – March 31, 2016 financial statements; neither reflect receipt of the loans. (Mann Cert. Apr. 26, 2021, Exhibits D and E.) Finally, the Liquidator points to a series of inconsistencies in these loan agreements. While shoddy draftsmanship, unfamiliarity with the law, and an accidental submission of the wrong documents do not indicate outright malfeasance, Plaintiffs, tellingly, have not disputed these facts with documentary evidence or certifications.

[7]     "'Misconduct' does not demand proof of nefarious intent or purpose as a prerequisite to redress.  For the term to have meaning in the Rule 60(b)(3) context, it must differ from both 'fraud' and 'misrepresentation.' Definition of this difference requires [courts] to take an expansive view of 'misconduct.' The term can cover even *accidental omissions*—elsewise it would be pleonastic, because 'fraud' and 'misrepresentation' would likely subsume it." *Anderson v. Cryovac, Inc.*, 862

*LLC,* No. 14-3342, 2018 WL 4589992 (D.N.J. Sept. 25, 2018); *Lonsdorf v. Seefeldt*, 47 F.3d 893, 895 (7th Cir. 1995) ("Fed. R. Civ. P. 60(b)(3) applies to both intentional and unintentional misrepresentations"). Indeed, Plaintiffs' initial narrative that Defendant simply defaulted on its loans has now been thrown into doubt. However, despite this purported fraud, there is a closer question regarding the timeliness of the motion under Rule 60(b)(3).[8] Nonetheless, I need not address this timeliness question because I find these judgments to be void under Rule 60(b)(4).[9]

The Liquidator argues that the judgments should be void under Rule 60(b)(4) because Krishnan and Mahesh lacked authority to accept service on behalf of Defendant and to consent to the entries of judgment. (Moving Br., at 21). "A judgment may be void when the court 'acted in a manner inconsistent with due process of law.'" *In re Polycel*, 2007 WL 77336, at *6 (quoting *Official Comm. of Unsecured Creditors v. U.S. Metalsource Corp. (In re U.S. Metalsource Corp.)*,

---

F.2d 910, 923 (1st Cir. 1988) (emphasis added) (citing *United States v. One Douglas A–26B Aircraft*, 662 F.2d 1372, 1374-75 n.6 (11th Cir. 1981)).

[8] A Rule 60(b) motion based on grounds (1)-(3) must be made "not more than one year after the judgment, order, or proceeding was entered or taken." Fed. R. Civ. Pro. 60; *See e.g.*, *Moolenaar*, 822 F.2d at 1346 n. 5 (3d Cir.1987); *Dietsch v. United States*, 2 F. Supp. 2d 627, 632 (D.N.J. 1998). This Court first entered judgment in Civil Action No. 20-363, on January 20, 2020. The Liquidator did not file the motion to vacate until February 26, 2021—more than one year after judgment was entered. The Liquidator argues that the one-year period should begin to run on February 27, 2020, when the Amended Judgment was entered. (Reply Br., at 9.) However, there are decisions which suggest that depending on the nature of the Amended Judgment, the clock does not start to run anew. *See, e.g., Torres*, 125 F.3d at 168. For example, in the context of an appeal, if an amendment is made to the original judgment, "[t]he time to appeal from a judgment begins to run anew [if] a lower court later 'resolves a genuine ambiguity' in that judgment." *Copeland v. United States Dep't of Just.*, 675 F. App'x 166, 170 (3d Cir. 2017) (citing *Fed. Trade Comm'n v. Minneapolis–Honeywell Regulator Co.*, 344 U.S. 206, 211 (1952)). "[T]he mere fact that a judgment previously entered has been reentered or revised in an immaterial way does not toll the time within which review must be sought." *Minneapolis–Honeywell Regulator Co.*, 344 U.S. at 211.  Because I vacate both Judgments pursuant to Rule 60(b)(4), I need not delve into the nature of the amendments in the Amended Judgment.

[9] As discussed *supra*, there is no time limit with respect to a challenge of a void judgment under Rule 60(b)(4) "because of its status as a nullity." *See e.g.*, *One Toshiba*, 213 F.3d 147, 157; *In re Polycel Liquidation*, 2007 WL 77336 at *6.

163 B.R. 260, 267 (Bankr. W.D.Pa. 1993)). "Due process requires 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Folger Adam Sec., Inc. v. Dematteis/Macgregor, JV*, 209 F.3d 252, 265 (3d Cir. 2000) (citation omitted). Due process is necessary to "apprise affected individuals of, and permit adequate protection for, an impending hearing." *In re U.S. Metalsource Corp.*, 163 B.R. at 268. "Accordingly, a lack of sufficient notice to an interested party may constitute a due process violation and *justify deeming a judgment void* under Rule 60(b)(4)." *In re Polycel*, 2007 WL 77336, at *6 (emphasis added).

Before considering the standing of the directors, the Court must first determine whether the Liquidator has standing to bring this motion on behalf of Defendant in the first instance. Plaintiffs do not contest the expert's recitation of the legal significance and consequence of the Singapore High Court's 2018 liquidation of Defendant. Indeed, Defendant describes a liquidation procedure that is comparable to a Chapter 7 bankruptcy proceeding under United States law. (Mann Cert. Feb. 26, 2021, ¶ 3.) According to Defendant's expert, a liquidator appointed by the High Court of Singapore, much like the Chapter 7 trustee, stands in the shoes of the corporation's management: "[o]nce a company is in liquidation, the board of directors is effectively *functus officio*. The power to run the company vests with the liquidator (only)." (Ibrahim Cert., ¶ 18 (citations omitted).)  Similarly, under United States Bankruptcy law, although a Chapter 7 trustee "may only assert claims held by the bankrupt corporation itself[,]" the Article III "'case or controversy' requirement coincides with the scope of the powers the Bankruptcy Code gives a trustee." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir.1991). In that regard, I find that, like a Chapter 7 trustee, the Liquidator is authorized to bring this motion on behalf of Defendant.

Correspondingly, the directors, at the time these cases were brought, did not have standing to bind Defendant. Plaintiffs argue that, as directors, Mahesh and Krishnan had the authority to accept process and sign consent judgment on Defendant's behalf. (Opposition, at 9.) The Liquidator, on the other hand, claims that the 2018 Singaporean liquidation proceeding stripped these directors of any and all authority to act on behalf of the company. (Moving Br., at 5.) I agree with the Liquidator.[10]

Plaintiffs have largely not disputed the Liquidator's version of events that occurred in Singapore, nor do they dispute the applicability of Singapore law as to Defendant's corporate status in Singapore. On November 26, 2019, following a year-long trial, the Singapore High Court appointed the Liquidator to take over as legal representative of Defendant. (Mann Cert. Feb. 26, 2021, ¶ 4.) On January 10, 2020—after the appointment—Plaintiffs filed suit in the District of New Jersey. (*Id.* ¶ 5.) Plaintiffs filed a second, nearly identical, lawsuit in February 2020. (*Id.* ¶ 17.) In each of these proceedings, Mahesh and Krishnan, directors of Defendant who were no longer authorized to legally represent Defendant following the Singaporean Order, improperly accepted service of process on behalf of Defendant and consented to the entries of judgment. Based

---

[10]     To illustrate, under the Bankruptcy Code, the bankruptcy estate comprises "all legal or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C. § 541(a)(1), and the "'interests of the debtor in property' include causes of action." *Bauer v. Commerce Union Bank*, 859 F.2d 438, 440–41 (6th Cir.1988), *cert. denied*, 489 U.S. 1079 (1989) (quoting *Gochenour v. Cleveland Terminals Bldg. Co.*, 118 F.2d 89, 93 (6th Cir. 1941). "The trustee in bankruptcy acts as representative of the estate and is the one with the capacity to sue and be sued." *Walton v. Wheatly Co.*, 986 F.2d 1423 (6th Cir. 1993) (citing *Bauer*, 859 F.2d at 441). Pursuant to 11 U.S.C. § 541(a)(1), "causes of action which formerly belonged to the debtor vest in the trustee for the benefit of the bankruptcy estate when the debtor files in bankruptcy under Chapter 7 of the Bankruptcy Code." *Id*; *see also Vreugdenhil v. Hoekstra*, 773 F.2d 213, 214 (8th Cir.1985) ("causes in action owned by the debtor at filing of bankruptcy petition are property of the estate."). Thus, under Chapter 7, "the debtor has no standing to pursue such causes of action." *Bauer*, 859 F.2d at 441.

on the appointment, the Liquidator was the only party with the appropriate authority to acknowledge notice of the Complaints and to consent to judgment on behalf of Defendant. Therefore, the consent judgments, as a matter of law, are void under Rule 60(b)(4); accordingly, these judgments are vacated, and both matters are re-opened.

## IV.     CONCLUSION

For the reasons set forth herein, Defendant's Motions to Vacate Judgment are **GRANTED**.

DATED:  July 23, 2021                                    /s/ Freda L. Wolfson
                                                        Freda L. Wolfson
                                                        U.S. Chief District Judge