**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| VERTIV, INC. et al., <br><br> Plaintiffs, <br><br> v. <br><br> WAYNE BURT PTE, LTD. et al., <br><br> Defendants. | Civ. Action No. 3:20-cv-00363 <br><br> **OPINION** |

<u>CASTNER, District Judge</u>

### I.    INTRODUCTION

This case comes before the Court on Defendant Wayne Burt, PTE, LTD.'s Motion to Dismiss the Amended Complaint (ECF No. 34), and its Motion to Dismiss Defendant TGS Mahesh's Cross-Claim (ECF No. 44). The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, the Motions to Dismiss are **GRANTED**.

### II.    BACKGROUND

The following facts are derived from the Amended Complaint (Am. Compl., ECF No. 29), this Court's previous Opinion (ECF No. 25), the moving papers filed before the Court, and the extensive record provided by the parties.

According to the Amended Complaint, Plaintiffs Vertiv, Inc. ("Vertiv"), Vertiv Capital Inc. ("Vertiv Capital"), and Gnaritis, Inc. ("Gnaritis") (collectively, "Plaintiffs"), are Delaware corporations. (Am. Compl. ¶¶ 1-3.)  Vertiv, Vertiv Capital, and Gnaritis all have principal places of business in Princeton, New Jersey.  (*Id.*)  Defendant Wayne Burt, PTE, LTD ("Wayne Burt") is a corporation based in Singapore.  (*Id.* ¶¶ 4, 6.)  Defendant and Cross-Claimant TGS Mahesh is alleged to have been the "director and major shareholder" of Wayne Burt and resides in India.  (*Id.* ¶ 5.)

On January 10, 2020, Plaintiffs filed a Complaint in this Court against Defendants Wayne Burt and Cetex Petrochemicals LTD ("Cetex").  (Original Compl., ECF No. 1.)  Plaintiffs' Original Complaint asserted that on April 5, 2015, Plaintiff Vertiv Capital loaned Defendant Wayne Burt eleven million five hundred thousand dollars ($11,500,000.00) and signed a Loan Agreement and Promissory Note agreeing to repay the principal amount plus "interest on the principal at 15% per annum up and until January 10, 2018 and said interest rate increased to 20% per year if defendant failed to repay the loan on January 10, 2018."  (*Id.* ¶ 8.)  The Original Complaint also asserted that Plaintiff Gnaritis loaned Wayne Burt two million five hundred thousand dollars ($2,500,000.00) on the same date under the same repayment terms.  (*Id.* ¶¶ 8-9.)  Plaintiffs also alleged that Vertiv loaned Wayne Burt two million dollars ($2,000,000) on the same date for the same terms.  (*Id.* ¶ 10.)  According to the Complaint, Defendants also signed a "Stock Pledge Agreement" that pledged "29,651,068 shares of stock which it owned in a company called Cetex Petrochemicals," representing 46.82% of the shares of Cetex.  (*Id.* ¶ 11.)  According to the Original Complaint, Wayne Burt defaulted on the terms of the Loan Agreements and failed to pay the balance owed to Plaintiffs.  (*Id.* ¶12.)  Plaintiffs filed suit against Defendants, requesting that a judgment be entered in their favor, and asserting four causes of action for breach of contract, unjust enrichment, book

2

account, and for a declaratory judgment that Vertiv is the owner of the pledged stock.  (*Id.* ¶¶ 18-37.)

On January 17, 2020, Plaintiffs requested that this Court enter judgment in favor of Plaintiffs against Defendants Wayne Burt and Cetex for the total sum of the Loan Agreements, including the principal and interest, of twenty-nine million, two hundred and ninety thousand dollars ($29,290,000) as well as the allegedly agreed upon stock of Cetex Petrochemicals.  (ECF No. 5.)  Importantly, in their submission, Plaintiffs indicated that Defendants Wayne Burt and Cetex have "consented to the entry of judgment" in the consent order.  (*Id.*)  Further, in a Certification submitted to this Court on January 17, 2020 (ECF No. 7), R. Krishnan,[1] the "Director of Wayne Burt Systems Pte, Ltd.," states that Plaintiffs loaned Wayne Burt the money identified in the Original Complaint, signed the Stock Pledge Agreement, and then ultimately, "[o]n or about January 10, 2018, Wayne Burt defaulted under the terms of the Loan Agreements and Promissory Notes by failing to pay the principal and interest due and owing from Wayne Burt to plaintiffs."  (*Id.* 1-2.)  Further still, Krishna Ghanta, the President and owner of Vertiv Capital, Vertiv, and Gnaritis, certified the same, on behalf of Plaintiffs.  (ECF No. 6.)

On January 24, 2020, the Consent Order was entered by the Court.  (ECF No. 9.)  Shortly thereafter, Plaintiffs filed a Motion to Amend/Correct the Judgment that was entered.  (ECF No. 10.)  Plaintiff did not seek additional relief, but rather sought only a new Order to provide additional factual background for the claim so the judgment could be enforced in India.  (ECF No. 10-2 ¶¶ 3-4) (*See id.* ("[Krishna Ghanta's Attorney] informed [Ghanta] that the underlying facts for entry of the judgment, i.e. the Loan Agreements, Stock Pledge Agreements and Wayne Burt's

---

[1] The Court notes that the document is titled "Certification of R. Krishnan," and signed by "R. Krishnan," but the first line of the certification states "I, R. Krishna, hereby certify as follows." (ECF No. 7, 1.)  The Court will refer to the Director as "R. Krishnan" or "Krishnan."

default, must be included in the judgment in order for him to submit it to the Courts in India should

that be necessary to enforce the shareholder rights of Vertiv.")   An Amended Consent Order

including that information was entered on February 27, 2020.  (ECF No. 15.)

After obtaining an Amended Judgment, Plaintiffs initiated a second lawsuit under Civil

Action No. 3:20-cv-13050 on September 22, 2020. This new action removed Cetex as a Defendant

but added Wayne Burt Petro Chemical Private Limited as a new Defendant. *See Vertiv, Inc. et al.,*

*v. Wayne Burt PTE, LTD., et al.*, Civ. No. 3:20-cv-13050 (D.N.J.) (ECF No. 1).

On February 26, 2021, almost exactly one year after the entry of judgment, Farooq Mann

("Mann"), a Singaporean Court Appointed Liquidator for Wayne Burt, filed a Motion to Vacate

Judgment in the original action pursuant to Federal Rule of Civil Procedure 60(b).[2] (ECF No. 16.)

The Court granted the motion to vacate the judgment in both this matter and in the related case.

(Opinion ("Op."), ECF No. 25.)   In vacating the judgment, the Court found that in an unrelated

proceeding, the High Court of the Republic of Singapore placed Defendant Wayne Burt into

liquidation, a process similar to Chapter 7 bankruptcy. (*Id.* 3.) The Court further determined that

the Liquidator, Farooq Mann, was appointed to "affect the liquidation of Defendant."  (*Id.*)

According to the Certification of Mann, which the Court relied upon in reaching its decision,

> Once the court enters such [a liquidation] order, all authority on the part of the
> directors and officers of the entity is terminated and vested in the liquidator. The
> authority of the liquidator becomes absolute, and any purported actions taken by
> the entity's former management are legally ineffective.   The entity under
> liquidation is without power to transfer assets, incur debt, make payment to
> creditors, or conduct its former business; instead, only the liquidator may

---

[2]   According to the Motion to Vacate, "Mann is a professional court appointed liquidator
maintaining a practice in Singapore.  He is periodically appointed by judges in the courts of
Singapore to supervise the winding up of business entities that are determined by a court to be
insolvent, through the collection of their assets, the liquidation of those assets and the distribution
of the proceeds to the creditors of the entity . . . .  Mann was appointed by the High Court of the
Republic of Singapore as liquidator of Wayne Burt, a company formed under the laws of
Singapore, pursuant to the Order of that court." (ECF No. 16-1, 4.)

> perform these functions. If a creditor has a claim against the entity, that claim
> is to be presented to the liquidator in connection with his administration of the
> liquidation process. The liquidator makes determinations as to the validity and
> quantum of the creditors' claims, subject to a process of judicial review if
> required.... [T]he process resembles a Chapter 7 bankruptcy under U.S. law.

(*Id.*) (alterations in original) (citation omitted). The Court ultimately granted the Motion and

concluded that the evidence of fraud that was presented by Mann was sufficient to fit the definition

of "misconduct" pursuant to Rule 60(b)(3) and found the judgments to be void under Rule 60(b)(4).

(*Id.* 11.) Specifically, Defendant

> [A]lleges that the directors [of Wayne Burt, Krishnan and Mahesh], after
> initially trying and failing to vacate the initial Singaporean liquidation order,
> colluded with Ghanta to invent the contested loans in order to secure judgments
> that left Plaintiffs in control of Defendant's liquidated assets. The Liquidator
> contends that Krishnan, Mahesh, and Plaintiffs, in their Complaints,
> intentionally omitted information regarding the liquidation of Defendant to
> expedite the outcome they desired.

(*Id.* 9-10.) Further, Mann asserted that he was intentionally excluded from these proceedings,

which is improper as he is "the sole legal representative of Defendant," and "is the only party with

the actual authority to act on behalf of Defendant in these cases." (*Id.* 10.) The Court concluded

that Mann stood in a similar position as a Chapter 7 bankruptcy trustee, which stripped any former

directors of "any and all authority to act on behalf of the company." (*Id.* 13.) The Court agreed

that the 2018 Singaporean liquidation proceeding removed any authority from the directors to act

on behalf of the company and ensured that only the appointed liquidator could make decisions and

accept service. (*Id.*)

Following this Court's opinion vacating the judgments, Plaintiffs consolidated the case

Civil Action No. 3:20-cv-00363 into the current action, and dismissed Wayne Burt Petro

Chemicals, PTE, LTD without prejudice. (ECF Nos. 27-28.)

On September 21, 2021, Plaintiffs filed an Amended Complaint.  (Am. Compl.)  The Amended Complaint removes Cetex as a Defendant, and adds, for the first time, TGS Mahesh, an individual who is alleged to be a director and major shareholder of Wayne Burt, and who "signed an Agreement of Guaranty, personally guaranteeing payment of any loans made to defendants, Wayne Burt, PTE, LTD."  (*Id.* ¶10.)

On November 17, 2021, Mann filed a Motion to Dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) on behalf of Defendant Wayne Burt. (MTD, ECF No. 34.)[3]  Defendant's Motion to Dismiss the Amended Complaint is based on two legal theories.

First, Defendant argues that Plaintiff's Amended Complaint fails to state a claim under Rule 12(b)(6) pursuant to the principle of international comity.  (MTD 11.)  Defendant asserts that due to the pending liquidation proceeding in Singapore, Plaintiff's "recourse is not a lawsuit in the United States," and Plaintiffs should instead "make a claim in the foreign bankruptcy proceeding," like other Wayne Burt creditors are required to do.  (*Id.* 11-12).  Defendant purports that the principle of international comity is particularly appropriate in the context of bankruptcy proceedings, and that this Court should grant the motion to dismiss and defer to the bankruptcy proceedings underway in Singapore.  (*Id.* 12, 17-18.)

Second, Defendant argues that the forum selection clause is so overbroad that it is unenforceable, and without the forum selection clause, this Court does not have personal jurisdiction.  (*Id.* 18.)  Defendants assert that of all the documents Plaintiffs rely on, namely the loan agreements, promissory notes, and the stock pledge agreement ("SPA"), only the SPA

---

[3] Any references or citations to the Motion to Dismiss ("MTD") are to Wayne Burt's Brief in Support of their Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6).  (*See* ECF No. 34-1.)

contains a forum selection clause. (*Id.* 9.) That forum selection clause, attached to the Amended Complaint as Exhibit A, states that "Wayne Burt irrevocably and unconditionally submits . . . to the non-exclusive jurisdiction of any court of competent jurisdiction . . . to the extent permitted by law, in such Federal, court." (Am. Compl. 22.) Ultimately, Defendants claim that this forum selection clause is "so broad that it fails to select a forum at all." (MTD 19.)

Further, Defendants assert that the choice of law provisions in the loan documents "disagree considerably." (*Id.* 10.) According to Defendant's moving papers, "[t]he SPA specifies that it should be governed by the laws of the State of New York or Singapore . . . . By contrast, the three loan documents and promissory notes specify that they should be governed by the laws of the State of New Jersey. Finally, the 'Memorandum of Understanding' specifies that it should be governed by the 'laws of the State of New Jersey/New York.'" (*Id.*) Ultimately, Defendant's assert that there is no consensus on the choice of law provision. (*Id.*)

Plaintiffs oppose the Motion to Dismiss. (Opp., ECF No. 39.) In their opposition, Plaintiffs claim that the Singaporean proceeding is "not entitled to this Court's deference, and the governing forum selection clause is sufficiently clear and enforceable." (*Id.* 2.) First, Plaintiffs argue that any allegations or intimations of fraud made by Defendants are "[i]mproper, [i]rrelevant, and [i]ncorrect." (*Id.* 7.) Second, Plaintiffs urge the Court not to rely on the principle of international comity and instead rely on *Philadelphia Gear Corp. v. Philadelphia Gear de Mexico, S.A.*, 44 F.3d 187, 193 (3d Cir. 1994) in support of their assertion that Defendants put forth an inaccurate standard for whether the Court should rely on international comity. (*Id.* 12.) Further still, Plaintiffs claim that Defendants misconstrue Singaporean law, and that such law does not require a stay of proceedings. (*Id.* 12-13.) Finally, Plaintiffs claim that the Court does have personal jurisdiction over Wayne Burt. (*Id.* 14.) According to Plaintiffs, the forum selection clause is not so overbroad

as to be enforceable, and the only reasonable interpretation of the clause is for jurisdiction to be in the United States federal courts. (*Id.* 16.)

Defendant filed a Reply on January 10, 2022. (Reply, ECF No. 41.)

On January 13, 2022, Defendant TGS Mahesh ("Mahesh") filed an Answer and Cross-Claim in lieu of a Motion as a response to the Amended Complaint. (ECF No. 42.) Mahesh brought a crossclaim for contribution and indemnification against Wayne Burt. (*Id.* 4.) According to the crossclaim, "[o]n July 18, 2014, TGS Mahesh signed an Agreement of Guaranty, personally guaranteeing payment of any loans made to Wayne Burt." (*Id.* 5, ¶ 3.) Then, as part of the loan, Wayne Burt and Mahesh signed "undated consents of default" in the event that the loans were actually defaulted on. (*Id.* 5-6, ¶¶ 5-7.) After the loans were made, Wayne Burt defaulted on the terms of the Loan Agreements and Promissory notes by failing to repay the balance, and the consents of default became effective. (*Id.* 7, ¶¶ 10-12.) Shortly thereafter, an unrelated entity, MRK Enterprises Pte Ltd Singapore ("MRK"), a creditor of Wayne Burt, filed a petition in Singapore High Court to declare Wayne Burt insolvent, and requesting an order to wind-up its business and liquidate the entity. (*Id.* 7, ¶ 13.) The High Court ultimately granted that request, appointed Mann as the liquidator, and "placed Wayne Burt under his control." (*Id.* 7-8, ¶ 14.)

Mahesh then asserts that Mann received a "Statement of Affairs ('SOA') reflecting Wayne Burt's assets and liabilities as of the date of the 'winding up order.'" (*Id.* 8-9, ¶ 20.) The SOA provided Mann with information about the debts at issue in this action. (*Id.*) It also informed Mann of any accounts receivable, including an outstanding balance of $12,000,000 that is owed to Wayne Burt. (*Id.*) Mahesh alleges that Mann, despite the information in the SOA, "has failed to pursue recovery of Wayne Burt's assets for the benefit of its creditors, and has failed to provide any update as to the liquidation/recovery process to its creditors"; and also did not contact Mahesh,

other directors of Wayne Burt, or Plaintiffs about the status of the loans or the Cetex shares before filing the Motion to Vacate. (*Id.* 9-10, ¶¶ 23-25.) Ultimately, Mahesh claims that by "litigating this action in this foreign jurisdiction and challenging, without investigating, the rights of Wayne Burt's secured creditors . . . Mann is needlessly and unjustly exposing Defendant/Cross-claimant TGS Mahesh to personal liability as guarantor of Wayne Burt's debts to Plaintiffs." (*Id.* 10, ¶ 26.)

On February 2, 2022, Mann, on behalf of Defendant Wayne Burt filed a Motion to Dismiss TGS Mahesh's Crossclaim. (MTDCC, ECF No. 44.)[4] Defendant makes three arguments in the Motion to Dismiss the Crossclaim. First, Defendant claims that dismissal is appropriate under the doctrine of *forum non convieniens.* (*Id.* 5.) Defendant claims that Mahesh has "already availed himself of [Singapore as a] forum when he appealed the winding up order in 2018, so it has already proven to be an adequate alternate forum available to him." (*Id.*) Defendant also notes that Mahesh has no connection to the United States and is a resident of India. (*Id.* 7.) Further, the entirety of Mahesh's assertions arise from allegations about Mann's conduct in the Singapore liquidation, making Singapore a more appropriate forum. (*Id.*) Second, Defendants make the same general arguments about international comity and personal jurisdiction that are made in its Motion to Dismiss the Amended Complaint. (*See id.* 10-13.) Finally, Defendant claims that Mahesh has failed to properly plead contribution and indemnification in the crossclaim. (*Id.* 13.) Defendant states that Mahesh has made "conclusory statements" that are not sufficient to state a claim for contribution or indemnification. (*Id.*) Further, Defendant states that "Mahesh's Cross-claim for indemnity fails to state a claim because he is at least partly at fault for the mess he has created in connection with Plaintiffs alleged 'loans' to Wayne Burt." (*Id.* 15.)

---

[4] Any references or citations to the Motion to Dismiss the Crossclaim ("MTDCC") are to Wayne Burt's Brief in Support of their Motion to Dismiss TGS Mahesh's Cross-Claim. (*See* ECF No. 44-1.)

Mahesh opposed the Motion to Dismiss the Cross-Claim on February 22, 2022. (CC Opp., ECF No. 45.)  In relevant part, as Mahesh "agrees that his Cross-Claim of contribution and/or indemnity supervenes on Plaintiffs' claims in the Amended Complaint and thus should be properly dismissed if, and only if, Wayne Burt's pending motion to dismiss the Amended Complaint is granted," his Opposition is limited only to Wayne Burt's *forum non convieniens* argument.  (*Id.* 3.)  Wayne Burt filed a Reply (CC Reply, ECF No. 46), responding largely to Mahesh's assertions regarding *forum non convieniens*, and concluding that Mahesh has not properly pled both contribution and indemnification.  (*Id.*)

## III.    LEGAL STANDARD

### A.    Motion to Dismiss

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quotations and citations omitted).  While Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  Thus, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

10

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To determine whether a plaintiff has met the facial plausibility standard under *Twombly* and *Iqbal*, courts within this Circuit apply a three-step test. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "outline the elements a plaintiff must plead to state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the court "peel[s] away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id.* Finally, where "there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

Defendant also moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2). "A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing Fed. R. Civ. P. 4(e)). New Jersey's long-arm statute permits the exercise of personal jurisdiction "to the uttermost limits permitted by the United States Constitution." *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 698 (3d Cir. 1990). Therefore, for a New Jersey court to exercise jurisdiction over a non-resident defendant, the defendant must have "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

When a defendant moves to dismiss a complaint for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, "the plaintiff bears the burden of showing that personal jurisdiction exists." *Marten v. Godwin*, 499 F.3d 290, 295–96 (3d Cir. 2007); *see*

*also Cerciello v. Canale*, 563 F. App'x 924, 925 n.1 (3d Cir. 2014) (quoting *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992)) (noting that the plaintiff bears the burden to demonstrate personal jurisdiction by a preponderance of the evidence). "To meet that burden, [the plaintiff] must 'establish[] jurisdictional facts through sworn affidavits or other competent evidence.'" *Cerciello*, 563 F. App'x at 925 n.1 (quoting *Miller*, 384 F.3d at 101 n.6). "In other words, 'bare pleadings alone' are insufficient to withstand a motion to dismiss for lack of personal jurisdiction." *Id.* Where the court does not hold an evidentiary hearing, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller*, 384 F.3d at 97.

There are two types of personal jurisdiction: general and specific. *See Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014). "General jurisdiction is based upon the defendant's 'continuous and systematic' contacts with the forum and exists even if the plaintiff's cause of action arises from the defendant's non-forum related activities." *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001). A court may exercise general jurisdiction over a defendant whose affiliations with the state "are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S. at 139 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

"[S]pecific jurisdiction is present only if the plaintiff's cause of action arises out of a defendant's forum-related activities." *Remick*, 238 F.3d at 255. "Determining whether specific jurisdiction exists involves three steps: (1) the defendant must have purposefully directed his activities to the forum; (2) the plaintiff's claim must arise out of or relate to at least one of those specific activities; and (3) the assertion of jurisdiction must otherwise comport with fair play and substantial justice." *Arpaio v. Dupre*, 527 F. App'x 108, 112 (3d Cir. 2013).

12

**B.**   International Comity

"A federal court may, in its discretion, dismiss a case based on comity." *Austar Int'l, Ltd. v. Austarpharma LLC*, 425 F. Supp. 3d 336, 362 (D.N.J. 2019). The Third Circuit has described international comity as the "recognition which one nation extends within its own territory to the legislative, executive, or judicial acts of another . . . [that] should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect." *Stonington Partners v. Lernout & Hauspie Speech Prods. N.V.*, 310 F.3d 118, 126 (3d Cir. 2002) (quoting *Somportex Ltd. v. Phila. Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir. 1972)). Generally, American courts will not review the "acts of foreign governments and will defer to proceedings taking place in foreign countries, allowing those acts and proceedings to have extraterritorial effect in the United States." *Gross v. German Found. Indus. Initiative*, 456 F.3d 363, 392 (3d Cir. 2006). *See Frumkin v. JA Jones, Inc. (In re Nazi Era Cases Against German Defendants Litig.)*, 129 F. Supp. 2d 370, 387 (D.N.J. 2001) ("The Third Circuit has repeatedly supported the principle [of international comity], holding that American courts normally give effect to the executive, legislative and judicial acts of foreign nations, and that domestic courts should withhold comity only when its acceptance would be contrary or prejudicial to the interest of the United States.") *See also In re Nazi Era Cases Against German Defendants Litig.*, 236 F.R.D. 231, 240 (D.N.J. 2006) (same). Further,

> Comity is a recognition which one nation extends within its own territory to the legislative, executive, or judicial acts of another. It is not a rule of law, but one of practice, convenience, and expediency. Although more than mere courtesy and accommodation, comity does not achieve the force of an imperative or obligation. Rather, it is a nation's expression of understanding which demonstrates due regard both to international duty and convenience and to the rights of persons protected by its own laws. Comity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect.

*Austar Int'l*, 425 F. Supp. 3d at 363 (quoting *Somportex*, 453 F.2d at 440-41).

The parties dispute what test the Court should rely on in determining whether international comity is appropriate in this instance.

Some courts in this District utilize a multi-factor test when determining whether international comity warrants a dismissal. The court considers "whether [1] the foreign country has jurisdiction over the actions . . .; [2] whether the actions are parallel . . .; [3] whether there exist 'extraordinary circumstances' justifying the stay or dismissal . . .; [4] and whether the United States' public policy militates against a stay or dismissal." *Id.* at 363 (internal citations and quotations omitted). *See also Can. Life Assurance Co. v. Converium Ruckversicherung (Deutschland) AG*, No. 06-3800, 2007 U.S. Dist. LEXIS 42890, at *19 (D.N.J. June 12, 2007) (using the same four factor test to determine whether international comity should apply). Whether an action is parallel is a threshold question. An action is "'[p]arallel' (or 'duplicative') when "there is a 'substantial likelihood that the [foreign] litigation will dispose of all claims presented in the federal case.'" *Lexington Ins. Co. v. Forrest*, 263 F. Supp. 2d 986, 1002 n. 13 (E.D. Pa. 2003) (quoting *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 695 (7th Cir. 1985)). Then,

> Once a district court has found that litigation is parallel to that taking place in the courts of a foreign sovereign, it must look for "extraordinary circumstances" that necessitate dismissal, which include (1) the desirability of avoiding duplicative litigation, (2) the inconvenience of the domestic forum, (3) the governing law, (4) the order in which jurisdiction was obtained in each forum, (5) the relative progress of each proceeding, and (6) the contrived nature of the domestic claim. In the absence of such extraordinary circumstances, the district court should retain jurisdiction over the action.

*Austar Int'l*, 425 F. Supp. 3d at 363 (internal citations omitted).

Plaintiff urges the Court to rely on the two-step test laid out by the Third Circuit in *Phila. Gear Corp. v. Phila. Gear de Mexico, S.A.*, 44 F.3d 187, 193 (3d Cir. 1994). The Court in *Philadelphia Gear* ruled on an appeal from an entry of summary judgment on trademark and

breach of contract claims. *Id.* at 189. The case proceeded through litigation to the summary judgment stage with no mention of any bankruptcy proceedings. In fact, the foreign bankruptcy was not before the District Court until a decision on the motion for summary judgment on the trademark and breach of contract claims was pending, at which point "the district court received a Letter Rogatory from a Mexican court, requesting that the district court either stay the case or transfer it to Mexico." *Id.* at 190. The letter, while issued by a Mexican court, was issued at the request of a party that "had instituted a suspension of payments proceeding in the Mexican court pursuant to the Mexican Bankruptcy and Suspension of Payments Laws," a process that is "somewhat analogous to Chapter 11" of the Bankruptcy Code. *Id.* The matter came to the Third Circuit because the District Court, despite receiving the letter, declined to either grant the request or mention the Letter Rogatory at all in its decision for summary judgment. *Id.*

In its analysis, the Third Circuit emphasized that "creditors of an insolvent foreign corporation may be required to assert their claims against a foreign bankrupt before a duly convened foreign bankruptcy tribunal." *Id.* at 192 (quoting *Remington Rand v. Business Sys. Inc.*, 830 F.2d 1260, 1271 (3d Cir. 1987)). Then, the Third Circuit concluded that

> [A] party seeking a stay of a judicial proceeding in this country based on a foreign bankruptcy proceeding must demonstrate the following: (1) the foreign bankruptcy court shares our policy of equal distribution of assets; and (2) the foreign law mandates the issuance or at least authorizes the request for the stay. If the party urging that comity be afforded the foreign proceedings makes such a *prima facie* showing, the district court should consider the matter further and should not dismiss the request out of hand without explaining its ruling.

*Id.* at 193. Ultimately, the Court in *Philadelphia Gear*, relying on the "opinion from a Mexican attorney" that indicated that "all creditors are treated equally," and that Mexican law mandated the "stay of the district court proceeding," concluded that "inasmuch as the Letter Rogatory was properly before the district court," and a prima facie case "for a stay of the district court

proceedings based on according comity to the Mexican proceedings" was made, "the district court abused its discretion when it granted summary judgment without even discussing the letter or making any factual findings on the comity issue." *Id.* at 193-94.

Regardless of what test the Court applies, "[t]he rationale for dismissals based on comity is not based simply on a lack of familiarity with the particular foreign law, but rather is in reference to the foreign country's legal, judicial, legislative, and administrative system of handling disputes over which it has jurisdiction, in a spirit of international cooperation." *Paraschos v. YBM Magnex Int'l, Inc.*, 130 F. Supp. 2d 642, 645 (E.D. Pa. 2000). In fact, when the court finds "true conflicts, a judgment from a foreign court, or parallel proceedings in a foreign forum," it may be appropriate for a United States court to "abstain[] from deciding the merits of a case on international comity grounds." *Gross v. German Found. Indus. Initiative*, 456 F.3d 363, 393 (3d Cir. 2006).

Further still, Chapter 15 of the United States Bankruptcy Code places an emphasis on international comity as well. The law's purpose is to "provide effective mechanisms for dealing with cases of cross-border insolvency," specifically with the objective of "cooperation between (A) courts of the United States, United States trustees, trustees, examiners, debtors, and debtors in possession; and (B) the courts and other competent authorities of foreign countries involved in cross-border insolvency cases." 11 U.S.C.S. § 1501(a)(1).

While courts can apply comity to any matter, the principles of international comity are "particularly appropriately applied in the bankruptcy context because of the challenges posed by transnational insolvencies and because Congress specifically listed 'comity' as an element to be considered in the context of such insolvencies, albeit in relation to ancillary proceedings." *Stonington Partners v. Lernout & Hauspie Speech Prods. N.V.*, 310 F.3d 118, 126 (3d Cir. 2002).

16

*See* 11 U.S.C. § 304. *See Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713-14 (2d Cir. 1987) ("American courts have long recognized the particular need to extend comity to foreign bankruptcy proceedings.") *See also JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d 418, 424 (2d Cir. 2005) ("[The Second Circuit has] repeatedly held that U.S. courts should ordinarily decline to adjudicate creditor claims that are the subject of a foreign bankruptcy proceeding. Since the equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding, American courts regularly defer to such actions.") (internal citations and quotations omitted).

However, ultimately, the court may "deny comity to a foreign legislative, executive, or judicial act if it finds that the extension of comity "would be contrary or prejudicial to the interest" of the United States." *Gross*, 456 F.3d at 393 (quoting *Somportex*, 453 F.2d at 440.)

## IV.   ANALYSIS

The above principles of international comity illuminate this Court's decision. The Court notes at the outset that the legal and factual setting of this case is difficult. The Court is essentially required to "accommodate conflicting, mutually inconsistent national regulatory policies while minimizing the amount of interference with the judicial processes of other nations." *Stonington Partners*, 310 F.3d at 125 (quoting *Laker Airways Ltd. v. Sabena*, 235 U.S. App. D.C. 207, 214, 731 F.2d 909 (D.C. Cir. 1984)). However, Wayne Burt essentially asserts that the relief that Plaintiffs seek would be inappropriate in light of Wayne Burt's ongoing Singaporean liquidation process, and that principles of international comity would compel disputes surrounding Plaintiffs' attempts to collect on a debt to be handled by Mann or the Singaporean High Court. This Court agrees.

"The principles of comity are particularly appropriately applied in the bankruptcy context because of the challenges posed by transnational insolvencies and because Congress specifically listed 'comity' as an element to be considered in the context of such insolvencies, albeit in relation to ancillary proceedings." *Id.* at 126.  This Court finds that international comity applies in the present action, and dismissal is appropriate here.

As mentioned above, the parties do not agree on what test this Court should use in its determination of whether international comity is appropriate here.  However, it is clear that regardless of what test is applied, extending comity to the proceedings in Singapore is an appropriate course of action.

First, this Court, like the courts in *Austar* and *Can. Life Assurance Co.*, will rely on the four-factor test articulated above to analyze whether comity is proper.  *See Austar Int'l, Ltd. v. Austarpharma LLC*, 425 F. Supp. 3d 336, 363 (D.N.J. 2019); *Can. Life Assurance Co. v. Converium Ruckversicherung (Deutschland) AG*, No. 06-3800, 2007 U.S. Dist. LEXIS 42890, at *19 (D.N.J. June 12, 2007).

With respect to the first factor, the parties have not challenged Singapore's jurisdiction on this matter.  Plaintiffs themselves state that Wayne Burt is "currently subject to liquidation proceedings in its home country of Singapore." (Opp. 1.)  While Plaintiffs make clear that they do not believe the Singapore proceedings should be subject to this Court's deference for a myriad of reasons, there is no question that all parties agree that Wayne Burt is under liquidation in Singapore, and that the matter is currently being litigated there.  Rather than asserting that the law governing the Singaporean liquidation does not apply to Plaintiffs or their claims, Plaintiff asserts that the Singaporean liquidation does not prevent this Court from adjudicating the merits of Plaintiffs' claims.  (*See* Opp. 5-9.)  Further still, Mahesh, the Cross-claimant, states that he is "a

resident of India and the largest shareholder of Wayne Burt, a Singapore Corporation *which is currently the subject of a liquidation proceeding in Singapore*." (CC Opp. 1.) (emphasis added.) As such, the first factor weighs in favor of finding international comity applies.

Turning to factor two, the Court concludes that the actions are parallel. The Court concludes that the Singapore liquidation proceedings involve the same parties, issues, and facts. Further, it appears that the two actions are requesting the same relief. It is clear to this Court that Wayne Burt is subject to Singaporean liquidation proceedings. It is also clear to this Court that Plaintiffs Vertiv, Vertiv Capital, and Gnaritis, are, in essence, creditors of Wayne Burt. Plaintiffs' Amended Complaint asserts that Wayne Burt incurred a debt that was never properly paid. Plaintiffs' Amended Complaint essentially seeks a judgment solidifying that it is a creditor of Wayne Burt for purposes of the bankruptcy proceedings. The Singaporean liquidation also permits a potential creditor to present a claim to the liquidator in connection with his administration of the liquidation process. (Mot. To Vacate Judgment, ECF No. 16-1, 5.) "The liquidator makes determinations as to the validity and quantum of the creditors' claims, subject to a process of judicial review if required." (*Id.*)

Similarly, Mahesh, a "resident of India and the largest shareholder of Wayne Burt," crossclaimed for contribution and indemnification before this Court. (CC Opp. 1.) His crossclaim

> hereby demands from Defendant WAYNE BURT PTE LTD and any /all other Defendants currently named or to be named to his action both contribution and indemnification pursuant to any/all applicable provisions of common law and/or contract and/or statute and/or, by way of demand for complete indemnification against Defendant WAYNE BURT PTE LTD and all other Defendants currently named or to be named, assert that any liability on the part of this Defendant is only secondary, vicarious, and imputed whereas the liability of Defendant WAYNE BURT PTE LTD and any/all such other Defendants was primary, direct, and active.

(ECF No. 42, 10-11.)  The Amended Complaint and Crossclaim place Plaintiffs and Mahesh in the unremarkable position of debtors attempting to collect debt from a company in a foreign analogue to bankruptcy.  Based on Defendant's submissions to this Court, Singaporean liquidation proceeding would adjudicate the claims by creditors made against Wayne Burt.  The Court thus concludes that because this would "dispose of all claims presented in the federal case," *Lexington Ins. Co.*, 263 F. Supp. 2d 986, 1002 n. 13 (E.D. Pa. 2003), the actions can be considered parallel.

Turning to the third factor, the Court will rely on the multi-factor test enunciated in *Hay Acquisition Co. v. Schneider*, No. 2:04-cv-1236, 2005 U.S. Dist. LEXIS 24490 (E.D. Pa. Apr. 27, 2005), to analyze whether there are "extraordinary circumstances" that necessitate dismissal.

1) Duplicative Litigation – As discussed in the Court's analysis concluding that the actions were parallel, the actions are substantively duplicative.  The Court does not presume to know the status of the litigation in Singapore, but at base, as a creditor in the liquidation process and as Plaintiffs before this Court, Plaintiffs seek money and stock damages from an entity in liquidation in a foreign country.  The actions and remedies sought are similar, and duplicative.  This factor weighs in favor of dismissal.

2) Inconvenience of the Domestic Forum – The Complaint alleges that all Plaintiffs have principal places of business in Princeton, New Jersey.  Wayne Burt is a Singapore Corporation, and it appears that Mahesh is a resident of India.  All parties are equally integral to the litigation of this matter.  The Court concludes that it is certainly convenient for Plaintiffs to litigate this matter in the domestic forum, but must note that the foreign presence of Wayne Burt and Mahesh may pose a challenge.  This factor does not tip the balance either way.

3) <u>Governing Law</u> – It is apparent that the Singaporean proceedings have progressed much further than these proceedings, presumably utilizing Singaporean law to do so. As mentioned above, the Singaporean High Court has already determined that Wayne Burt is insolvent, a determination that this Court has not been asked to make. However, this Court notes that the parties raise substantive arguments over the choice of law and even over this court's personal jurisdiction over Wayne Burt. Ultimately, as the question of which law should apply is a merit-based question that has yet to be adjudicated, this factor does not tip the balance either way.

4) <u>Order in which jurisdiction was obtained</u> – It appears undisputed that the Singaporean proceeding was filed first. The present action was filed on January 10, 2020. (*See* Compl.) While the Court is not certain exactly when the proceedings in Singapore began, it appears that on November 16, 2018, the Singaporean High Court concluded that Wayne Burt was insolvent. Presumably, proceedings started well before that date. *See Ronar, Inc. v. Wallace*, 649 F. Supp. 310, 318 (S.D.N.Y. 1986) ("When as in this case the foreign action is pending rather than decided, comity counsels that priority generally goes to the suit first filed.") This factor weighs in favor of dismissal.

5) <u>Progress of each proceeding</u> – It is apparent to the Court that the Singaporean proceeding is notably further along than these proceedings. The Singaporean High Court has already appointed Mann to wind up Wayne Burt's affairs, after a finding of insolvency. It then appears that Mahesh challenged the liquidation, obtained a temporary stay, a trial occurred, and ultimately it was ordered that the liquidation continue. Contrary to that, the instant proceeding is presently at the Motion to Dismiss stage. No substantive discovery has occurred to this Court's knowledge, much less a trial on any of the related issues. Despite

21

much motion practice, the instant proceeding is in its infancy when compared to the Singaporean proceeding. This factor weighs in favor of dismissal.

6) <u>Contrived nature of the domestic claim</u> – This Court will not consider the parties' arguments regarding any alleged fraudulent transactions, nor will it delve into an analysis of what entities were in existence at what time, as those issues are, by their very nature, issues of fact that cannot be appropriately resolved on a Motion to Dismiss. Nevertheless, the parties have raised serious issues including allegations that the loans never occurred, that the loan documents are fraudulent, and possible bad acts by Wayne Burt's former directors. These allegations are certainly best adjudicated by the forum that ordered the liquidation and subsequent wind up. This factor weighs in favor of dismissal.

Ultimately, the *Hay* factors weigh in favor of dismissal.

Finally, while it appears to be true that "there is very little case law on the magnitude of the importance of public policy considerations," in this context, this Court does conclude that United States public policy militates in favor of a stay. *Stonington Partners v. Lernout & Hauspie Speech Prods. N.V.*, 310 F.3d 118, 128 (3d Cir. 2002). *See Allstate Life Ins. Co. v. Linter Grp., Ltd.*, 994 F.2d 996, 1000 (2d Cir. 1993) ("American courts have consistently recognized the interest of foreign courts in liquidating or winding up the affairs of their own domestic business entities. . . . and noting that "the granting of comity to a Foreign bankruptcy proceeding enables the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion, comity has long been recognized as appropriate." (internal citations omitted)). The Third Circuit has stated that "comity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect." *Phila. Gear Corp. v. Phila. Gear de Mexico*, 44 F.3d 187, 191 (3d Cir 1994). This Court agrees and concludes that the principles of international comity guide this Court to dismiss

this action, and permit the parties to continue to utilize the Singaporean liquidation process to adjudicate their claims as creditors. The laws and public policy of the United States would not be violated or infringed by according comity to the Singapore liquidation. The prospect of dueling Courts, conflicting orders, and attempts to enforce conflicting orders raises major concerns of international comity in this case.

Turning next to the test in *Philadelphia Gear*, the Court again concludes that comity is appropriate here. "[A] party seeking a stay of a judicial proceeding in this country based on a foreign bankruptcy proceeding must demonstrate the following: (1) the foreign bankruptcy court shares our policy of equal distribution of assets; and (2) the foreign law mandates the issuance or at least authorizes the request for the stay." *Id.* at 193. Before applying the two-factor test to the case at hand, the Court must note that there are several procedural and substantive differences identified in *Philadelphia Gear* that are not present here.

First, the District Court below issued a ruling on a Motion for Summary Judgment – a procedural stage well past the Motion to Dismiss this Court is faced with. Further, the District Court in *Philadelphia Gear* was not tasked with a request to make substantive rulings about any alleged debts while a simultaneous liquidation proceeding was ongoing in another jurisdiction. Plaintiffs here have asked the Court, as has Mahesh as a Cross-Claimant, to render judgments against Defendants for large sums of money, regardless of the impact on the pending liquidation in Singapore. In fact, in *Philadelphia Gear*, the foreign bankruptcy was not an issue during the entire underlying litigation and motion practice. *See id.* There, the Court was asked specifically to rule on whether an ongoing bankruptcy proceeding in a foreign jurisdiction warrants either *transferring* an unrelated, non-bankruptcy case to the Mexican courts' jurisdiction to be

adjudicated with, or in light of, the foreign bankruptcy, or simply *staying* it pending the resolution of the Mexican bankruptcy and issuing a ruling at that time.

Nevertheless, using the two-step test enunciated in *Philadelphia Gear*, the Court concludes that comity is appropriate here. The Court in *Philadelphia Gear* relied on the opinion of a Mexican attorney, submitted by the appellant, that while "not completely free from ambiguity ... seems to be stating that under the [Mexican Bankruptcy and Suspension of Payments Laws ("MBSPL")], all creditors are treated equally." *Id.* at 193. Further, they relied on the same Mexican attorney's opinion which "stated that Article 409 of the MBSPL mandates the stay of the district court proceeding." *Id.* The Third Circuit then concluded that appellant, via the opinion of the Mexican attorney, had "demonstrate[d] that the foreign bankruptcy court shares our policy of equal distribution of assets," and "presented a prima facie case that Mexican law mandates a stay of the district court proceedings." *Id.*

Here too, the Court will rely on the submissions of the parties in determining whether the standard set out by *Philadelphia Gear* has been met. As to the first prong, Defendant Wayne Burt submits the Certification of Patrick Collins in Support of the Reply Brief on the Motion to Dismiss, and an excerpt from Halsbury's Laws of Singapore, Insolvency (Volume 13) 150.457. (ECF No. 41-1.) It states that

> The principle of equality of division among creditors is one of the (if not the most) fundamental principles of the law of liquidation (and of insolvency in general) and is at the very heart of the whole statutory scheme of winding up. In essence, the equality principle . . . states that all persons similarly situated are entitled to equality in treatment in the distribution of the assets of the insolvent company.

(Ex. A, ECF No. 41-1, 1-2.) This information, similar to what was provided by the Mexican attorney in *Philadelphia Gear,* makes clear that Singapore's liquidation process shares "our policy of equal distribution of assets." *Phila. Gear*, 44 F.3d at 193.

As to the second prong of the *Philadelphia Gear* test, Defendant relies on the Certified Statement of Raeza Khaled Salem Ibrahim in Support of the Motion to Vacate. (Ibrahim Cert., ECF No. 16-3, 18.) (*See* Reply, ECF No. 41, 7.) Ibrahim, an Advocate and Solicitor of the Supreme Court of Singapore who practices law as a Director at a Singapore incorporated law firm, was "engaged by Mr. Farooq Mann of Mann & Associates PAC, to provide advice in his capacity as Court-appointed liquidator of Wayne Burt Pte Ltd." (*Id.* 2.) He annexes a copy of all provisions of The Statutes of the Republic of Singapore: Companies Act (Chapter 50), which he certifies was the law in place at the time of Wayne Burt's liquidation. (*Id.* 3.) Chapter 50 has a provision staying actions upon the issuance of a winding up order, and states that "[w]hen a winding up order has been made or a provisional liquidator has been appointed, no action or proceeding shall be proceeded with or commenced against the company except – a) by leave of the Court; and b) in accordance with such terms as the Court imposes." (*Id.* 18.) The Court is thus satisfied that Singapore insolvency and liquidation law "at least authorizes" that no court proceedings move forward against Wayne Burt during the winding up process, which this Court interprets as permitting the dismissal of the instant case as Plaintiffs do not assert that they acquired Singaporean court authorization to bring it.

V.    **CONCLUSION**

Ultimately, for these reasons, Defendant Wayne Burt's Motions to Dismiss are **GRANTED**, and the Complaint is dismissed with prejudice.

Date: November 30, 2022          /s/ Georgette Castner

GEORGETTE CASTNER, U.S.D.J.